PER CURIAM
In this case, we must decide whether the failure to timely appeal a turnover order deprived the court of appeals of jurisdiction. Our decision turns on the finality of an order that affected a non-judgment debtor's rights. The order directed funds subject to disputed ownership claims into the court's registry "without prejudice" to the rights of either the judgment creditor or non-judgment debtor to later seek the funds' release. We conclude that a turnover order is not a final, appealable judgment when it merely orders funds subject to an as-yet-unadjudicated ownership dispute into the court's registry. Accordingly, we reverse and remand to the court of appeals to consider the merits.
I
This case arises from a post-judgment turnover proceeding to enforce a final, monetary judgment that the trial court entered in the underlying lawsuit (the lawsuit). Kingwood CrossRoads, L.P. brought this lawsuit against Chevron Phillips Chemical Company, LP (CPChem), Exxon Land Development, Inc., and others. Mayer Brown, LLP represented Kingwood at trial. The facts at issue in the lawsuit are not at issue here. However, the lawsuit was complex and involved multiple claims. Both CPChem and Exxon brought counterclaims against Kingwood.
In 2008, the trial court entered a final judgment (the underlying judgment), which CPChem then sought to enforce in the turnover proceeding now at issue. In the underlying judgment, the trial court ruled for CPChem on Kingwood's contract claim, but also awarded damages to Kingwood against CPChem on other claims. The trial court also ruled for Kingwood when it ordered Exxon to pay $637,612.50 in sanctions. As the prevailing party on Kingwood's contract action, CPChem was awarded attorneys' fees.
CPChem and Exxon appealed the trial court's judgment (the 2008 appeal). On appeal, Alexander Dubose Jefferson & Townsend, LLP (ADJT) represented Kingwood. The court of appeals affirmed CPChem's judgment for attorneys' fees and reversed Kingwood's judgments *579 against CPChem. Thus, CPChem became a judgment creditor and Kingwood became CPChem's judgment debtor.[1]
Also, in the 2008 appeal, ADJT successfully defended Kingwood's sanctions judgment against Exxon.[2] In 2013, this Court denied petitions for review and rehearing. Having exhausted its appellate remedies, Exxon sought to pay Kingwood's trial counsel, Mayer Brown, the approximately-$1-million-sanctions judgment upheld on appeal.[3] Mayer Brown deposited Exxon's $1 million payment into its IOLTA account. Mayer Brown, ADJT, and Kingwood had previously entered an alternate-fee arrangement. ADJT now relies on the fee arrangement to assert that it is entitled to 50% of the Exxon payment because it satisfied the condition precedent of successfully defending the Exxon sanction judgment on appeal.
Meanwhile, Kingwood failed to pay its judgment debt to CPChem. Therefore, in 2013, CPChem applied for turnover assistance, seeking to collect its debt from the $1 million paid by Exxon. Before the turnover hearing, ADJT sought to intervene in the proceeding, seeking a declaration that it owned 50% of the funds CPChem sought due to its contingency-fee agreement. ADJT argued that CPChem had no claim against ADJT's portion of the payment as Kingwood, the judgment debtor, did not own those funds. Alternatively, ADJT contended its contractual claim to the funds had priority over CPChem's claim as a judgment creditor. CPChem filed a motion to strike the intervention and an answer opposing the relief ADJT sought.
At a hearing on both CPChem's application for a turnover order and ADJT's plea in intervention, the trial court orally denied CPChem's motion to strike the intervention. But it also expressly doubted the merits of ADJT's position. The trial court indicated it would grant CPChem turnover assistance as to the uncontested 50% of the Exxon payment and ordered the disputed 50% of the payment deposited into the court's "registry ... pending appeal." It also requested that its rulings be put into a final judgment.
On November 8, 2013, the trial court signed an order (the Turnover Order) directing Kingwood to turn over half of the funds directly to CPChem and that the other half be placed in the court's registry. The Turnover Order concluded by saying the "Turnover Order is without prejudice to any right of either CPChem or ADJT to seek the release of the $494,427.32 to be held initially in the Court's Registry." It was silent as to ADJT's intervention and request for a declaration, as well as CPChem's motion to strike. Neither CPChem nor ADJT appealed the Turnover Order. To be timely, a notice of appeal was due December 8, 2013.
In April 2014, nearly six months after the trial court signed the Turnover Order, CPChem filed a motion for final judgment on ADJT's intervention. ADJT filed a response opposing the final judgment motion and moving the court to release the funds *580 in the registry that same day. CPChem then filed a motion to enforce the Turnover Order and to have the registry funds released to it on the grounds that ADJT triggered a condition for releasing the funds when it neglected to appeal the Turnover Order.
On June 9, 2014, the trial court signed the "Order and Final Judgment on Pending Matters" (the Release Order), which: (1) denied ADJT's motion to release registry funds; (2) ordered the Turnover Order enforced and registry funds released to CPChem with accrued interest upon the order becoming final and appellate remedies being exhausted; and (3) declared "this Order and Final Judgment is a Final Judgment" and "as such is appealable." ADJT filed its notice of appeal on July 9, 2014.
The court of appeals dismissed ADJT's appeal for want of jurisdiction, holding ADJT should have appealed the Turnover Order, not the Release Order, because the Turnover Order was the final, appealable judgment.[4] ADJT contended that it timely appealed the Release Order, which was the only final order on its claim to the funds.[5] It reasoned that the Turnover Order was an interlocutory order because it did not direct the disputed funds be turned over to CPChem and failed to specify who owned the funds in the trial court's registry.[6]
The court of appeals stated that courts determine disputes pertaining to the finality of an order by ascertaining a trial court's intent from the language of the order and the record, as well as the parties' conduct when appropriate.[7] The court first reasoned that the Turnover Order required Kingwood to turn over the full Exxon payment with half tendered directly to CPChem and the other half deposited into the court's registry.[8] Moreover, since the Turnover Order listed the disputed funds among Kingwood's assets, the court of appeals interpreted it to unambiguously indicate that the trial court found Kingwood owned the funds, not ADJT.[9] The court of appeals admitted courts ordinarily cannot use turnover proceedings to decide substantive rights to property.[10] However, it relied on a case that held a trial court can determine a non-judgment debtor's substantive property rights in a turnover proceeding if the non-judgment debtor voluntarily intervened and placed its ownership claims in dispute.[11]
The court of appeals also construed the record to reflect the trial court's intent for the Turnover Order to be final because of the trial court's oral rulings at the turnover proceeding-namely that the trial court denied CPChem's motion to strike, while simultaneously expressing its intent to deny all relief sought in ADJT's plea in intervention.[12] The court of appeals acknowledged *581 that an order to deposit funds into a court's registry is ordinarily interlocutory because a subsequent order adjudicating the parties' substantive rights is required.[13] But the court of appeals held the trial court did not order the disputed funds into the registry pending a final determination of ownership, but rather merely to earn interest pending appeal.[14]
Finally, the court of appeals regarded ADJT's motion to release as requesting the same relief ADJT previously sought in the intervention and, thus, viewed it as essentially a motion to reconsider.[15] Consequently, it held the Release Order merely reaffirmed the Turnover Order and that the release of the funds from the registry was a mere ministerial act, not a substantive determination of ownership.[16] The Release Order, therefore, did not revive the timeline for appealing the Turnover Order.[17] For these reasons, ADJT's notice of appeal, which it filed thirty days after the Release Order, came seven months too late.[18]
II
The Texas turnover statute provides judgment creditors with a procedural device to assist them in satisfying their judgment debts.[19] Pursuant to the statute, a judgment creditor can seek court assistance in reaching a judgment debtor's property that is "otherwise difficult to attach or levy on by ordinary legal process."[20] "[I]f the judgment debtor owns property," the statute authorizes a court to aid a judgment creditor in satisfying outstanding liabilities by "order[ing] the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control."[21]
Generally, every court with jurisdiction to render a judgment also has the inherent authority to enforce its judgments.[22] Unlike plenary power, which generally only lasts for thirty days after final judgment,[23] a trial court's post-judgment enforcement powers "can last until the judgment is satisfied."[24] Due to the uncertain duration of a trial court's post-judgment enforcement power, the finality of enforcement orders, including turnover orders, can become uncertain.[25]
Usually, only final judgments are subject to appeal.[26] In addition, a judgment's *582 finality determines whether an appellant invoked a court's appellate jurisdiction by timely filing a notice of appeal.[27] Although turnover orders necessarily follow an underlying final judgment, they must also be final and timely appealed to successfully confer appellate jurisdiction.[28] However, what qualifies as "final" in the turnover context necessarily diverges from the more traditional concept of finality.[29] This Court has held that a turnover order that acts as a mandatory injunction is a final, appealable judgment.[30] Before analyzing the finality of the Turnover Order, we first examine whether the trial court ever ruled upon the merits of ADJT's claims to the disputed funds.
A. The Trial Court's Merits Determinations
Since the Turnover Order listed the disputed portion of the funds among Kingwood's assets, the court of appeals imferred that the trial court determined Kingwood owned the funds. Although the court of appeals viewed the Turnover Order as unambiguously indicating Kingwood owned the funds, such a conclusion is refuted by the Turnover Order's statement that ordering the disputed half of the funds into the court's registry was "without prejudice to any right of either CPChem or ADJT to seek the release of the $494,427.32 to be held initially in the Court's Registry."
We also cannot reasonably construe the trial court's oral statements at the hearing as expressing a present intent to render judgment on ADJT's plea in intervention when the judge's remarks included statements like:
• "Motion to Strike Intervention, let me just tell you what I think -what I'm going to do and what I think the law is and that's why I'm going to do it ....";
• "[T]he Motion to Strike Intervention is denied. However, I'm going to deny any relief in the intervention ...." (emphasis added).
While the trial judge said "I'm going to order [the funds] to be held in the registry of the Court ... pending appeal," his lack of a present intent to resolve the dispute is demonstrated by his subsequent request for a judgment that brings finality to the issues and continuously saying what he was "going to" do.[31] For these reasons, when the trial court signed the Turnover *583 Order, the court had never finally adjudicated the parties' competing claims to the funds.
The Turnover Order also did nothing to dispose of ADJT's intervention and request for a declaration pertaining to its rights to the disputed funds. Ordering the funds into the registry of the court pending appeal and "without prejudice to any right" of either claimant does not reflect a ruling on who is entitled to the funds. It does precisely the opposite.[32] If the Turnover Order did not impede ADJT's rights to seek release of the funds at a later date, then the order implicitly reflects that it did not determine the parties' ownership dispute. And it is worth noting that there was never a separate, initial proceeding adjudicating ADJT's claims.[33] Rather, the only judgment or order that ever expressly spoke to ADJT's plea in intervention or ownership assertions is the Release Order, which expressly denied the relief ADJT sought. Moreover, the trial court's entry of the Release Order reflects that it too believed the claims were still pending before it.
The court of appeals' analysis also runs counter to precedent that regards turnover proceedings as being limited to their purely procedural nature and, thus, bars use of the turnover statute to determine parties' and non-judgment debtors' substantive rights.[34] To conclude the Turnover Order made a substantive determination regarding ownership of the funds would deprive existing precedent of any weight it might merit. If trial courts are in fact precluded from ruling upon the substantive rights of parties to the judgment sought to be enforced, it defies logic to hold the same court is empowered to determine the rights of complete strangers to the underlying judgment it is enforcing in that very proceeding.[35] To this end, the court of appeals' opinion contravenes this Court's precedent and the often-recited rule limiting the scope of turnover proceedings.
*584 Admittedly, however, in 1991, this Court issued conflicting opinions that have caused much confusion in this area and have blurred the contours that once clearly defined the permissible scope of turnover proceedings.[36] Accordingly, courts are troubled by: (1) how to resolve competing substantive claims to property sought in a turnover application if the turnover proceedings is truly a purely procedural mechanism, and (2) the extent to which a turnover order can affect the rights of non-judgment debtors.[37] CPChem's only *585 substantive argument on this point is that since AJDT intervened, it voluntarily injected its claims into the turnover proceeding, thus, opening the door to their adjudication. Although some opinions view intervention as a proper method for a third party to protect its rights in a turnover proceeding, none go as far as holding that intervention enables a court to adjudicate third-party rights in what is otherwise a purely procedural device.[38] The court of appeals and CPChem both rely on Cre8 to support this position. There the court recognized turnover proceedings cannot adjudicate third-party rights but held a third party was bound by the decision since it "voluntarily injected itself into the proceedings by intervening."[39] Yet the court of appeals cited no legal authority for that proposition and goes on to discuss preservation of error.[40] And the turnover statute has no provision conferring authority on trial courts to decide the substantive rights of the parties properly before it in a turnover proceeding, let alone the rights of strangers to the underlying judgment. The opinion does not explain how a third party's consent via a plea in intervention suddenly confers such authority.
CPChem's contention is further weakened by looking at the two other cases it relies on. The court of appeals in In re deShetler supports this intervention exception by citing Cre8 and its earlier opinion in this very case now before the Court.[41] And in deShetler , the court stated a trial court cannot decide substantive issues in a turnover order and turnover orders cannot issue against an intervenor when substantive rights must be decided.[42] Instead, it stated a turnover order can only issue after a court holds separate proceedings.[43] It reasoned that the turnover order at issue here was valid since ADJT presented arguments to the trial court, even though it goes on to invalidate the turnover order in deShetler because it was not supported by a final judgment despite the fact the intervenor's attorney "was allowed to make arguments" there as well.[44] Its reasoning, and CPChem's reliance on it, seem contradictory for this reason. Moreover, the other case CPChem relies on also only cites Cre8 to support the proposition that a non-judgment debtor cannot complain that their substantive rights were decided in a *586 turnover proceeding if they intervened.[45] Therefore, this appears to be a novel exception in the turnover proceeding context.
However, the absence of any other judgment regarding ADJT's claims, in addition to our conclusion that the trial court's order does not reflect a decision on ADJT's substantive claims, is dispositive as to whether a court has ever determined ADJT's ownership claims. Therefore, because it is clear no such ruling exists in this case, we need not delineate the appropriate mechanism for resolving competing substantive claims to property sought in a turnover application.
B. Finality of the Turnover Order
Having concluded that no trial court had ever decided ADJT's substantive claims to the disputed funds before entry of the Turnover Order and until issuance of the Release Order, we turn to whether the Turnover Order was the final, appealable judgment that ADJT needed to appeal. The issue, therefore, is narrowly confined to whether the provision of the Turnover Order directing funds into the registry can qualify as a mandatory injunction when a court has never determined the non-judgment debtor's substantive ownership rights to the funds.
Schultz concluded a turnover order that functions as a mandatory injunction is a final, appealable judgment.[46] However, whether that decision holds that all turnover orders function as mandatory injunctions is disputed. At times, the opinion speaks in absolutes.[47] Yet the Court premised its finality conclusion upon the fact that the specific order before it acted as a mandatory injunction.[48] In a later opinion, this Court simply stated: "[A] turnover order is a final, appealable judgment."[49]
Most courts of appeals merely state that because turnover orders function similarly to mandatory injunctions, turnover orders are final and appealable judgments.[50] Other courts of appeal go further and explicitly or implicitly condition a turnover order's finality upon its semblance to a mandatory injunction.[51] Regardless, *587 every opinion at least relates a turnover order's finality to it resembling a mandatory injunction.[52] Simply because an order is entitled "turnover order" does not necessarily suggest it acts like a mandatory injunction.[53] Thus, in the rare instance when a turnover order does not function as a mandatory injunction, it is not final.[54] Accordingly, even if a third party's rights are a proper subject in a turnover proceeding, a turnover order still has to satisfy Schultz's requirement that it be in the nature of a mandatory injunction. The Turnover Order at issue only partially satisfies that standard. The portion of the Turnover Order regarding the undisputed funds was clearly in the nature of a mandatory injunction because it required the judgment debtor, Kingwood, to deliver funds directly to the judgment creditor, CPChem.[55]
However, portions of an order can be injunctive in nature and, thus, final and appealable, while other provisions of the same order can be interlocutory and unreviewable because they do not resemble injunctive relief.[56] For example, at issue in Prodeco Exploration, Inc. v. Ware was an order requiring a party to deposit funds subject to an ownership dispute into the registry and obliging the same party to deposit "a suitable bond with surety ... made payable to the District Clerk" into the registry.[57] The court held the parties could not appeal the part of the order directing the disputed funds into the registry because those provisions were not injunctive.[58] However, the portion referring to the bond was appealable because it "was injunctive[ ] since it required [the party] to take affirmative action to secure the performance of the court-imposed obligation to make the required deposit."[59]
Similarly, when analyzing orders directing funds deposited into the court's registry of the court pending a final adjudication *588 of ownership, most courts deem these orders as interlocutory and not subject to appeal.[60] CPChem attempts to distinguish these cases by noting they were all pre-judgment orders to deposit funds into the registry to protect the funds pending a determination of ownership. It contends that because turnover orders are subsequent to a final judgment and necessarily resolve property rights, such orders are always final and appealable, as well as injunctive in nature. However, this argument overlooks the reality that ADJT's ownership claims had never been decided by any court. The Turnover Order here was akin to these pre-judgment orders directing funds into the court's registry pending a determination of competing ownership claims because ADJT's claims remained undecided. Consequently, the portion of the Turnover Order pertaining to the disputed funds did not function as a mandatory injunction.
And while ADJT's motion to release may have once again sought the funds, it simultaneously requested a final conclusion as to its pending, competing claims and an order conclusively establishing entitlement to the funds pending in the court's registry.[61] For this reason, it sought relief the trial court had not yet ruled upon, and it, thus, constituted more than a mere motion to reconsider, despite the court of appeals' view to the contrary. Since the Release Order was the first order that spoke to the merits of ADJT's pending and competing ownership claim, the Release Order was more than a mere affirmance of the Turnover Order.[62] Instead, the Release Order was the first determination of competing substantive ownership rights and was the final, appealable judgment.
III
We hold ADJT timely appealed the Release Order. The Turnover Order's provisions on this issue did not function as a mandatory injunction, which means the Release Order was the final judgment on ADJT's claims. We remand the case to the court of appeals for its consideration of the *589 merits of the appeal.[63]
Justice Lehrmann and Justice Blacklock did not participate in the decision.

The court of appeals also remanded the case to the trial court to determine the amount of attorneys' fees Kingwood was to receive from CPChem. On remand, the trial court awarded Kingwood an attorney-fee recovery from CPChem at $3.7 million. On September 21, 2017, the court of appeals reversed Kingwood's attorney-fee recovery and remanded to the trial court for it to once again determine the proper amount.

Chevron Phillips Chem. Co. v. Kingwood Crossroads, L.P. , 346 S.W.3d 37, 78 (Tex. App.-Houston [14th Dist.] 2011, pet. denied).

With post-judgment interest, the final amount of Kingwood's sanctions judgment totaled $988,854.64.

503 S.W.3d 1, 8 (Tex. App.-Beaumont 2016).

Id. at 4-5.

Id. at 5.

Id. at 6.

Id.

Id.

Id.case-ids="12175957" index="7" url="https://cite.case.law/sw3d/503/1/#p8"> at 6-7.

Id. at 6. The court of appeals relied on Cre8 Int'l, LLC v. Rice , which held that by voluntarily injecting oneself into a turnover proceeding to adjudicate substantive ownership claims, an intervenor cannot later complain that the trial court improperly decided an ownership dispute since the intervener "obviated the need for a separate proceeding." No. 05-14-00377-CV, 2015 WL 3492629, at *3-4 (Tex. App.-Dallas June 3, 2015, no pet.) (mem. op.).

503 S.W.3d at 7.

Id.

Id.

Id. at 7-8.

Id. at 8.

Id.

Id.

Tex. Civ. Prac. & Rem. Code § 31.002.

Beaumont Bank, N.A. v. Buller , 806 S.W.2d 223, 224 (Tex. 1991).

Tex. Civ. Prac. & Rem. Code § 31.002(a) -(b)(1).

Arndt v. Farris , 633 S.W.2d 497, 499 (Tex. 1982) (orig. proceeding) (citing Ex parte Gorena , 595 S.W.2d 841, 844 (Tex. 1979) ).

Tex. R. Civ. P. 329b(d).

Black v. Shor , 443 S.W.3d 170, 176 (Tex. App.-Corpus Christi 2013, no pet.) (first citing Tex. R. Civ. P. 308 ; and then citing Bahar v. Lyon Fin. Servs., Inc. , 330 S.W.3d 379, 386 (Tex. App.-Austin 2010, pet. denied) ).

See London v. London , 349 S.W.3d 672, 678 (Tex. App.-Houston [14th Dist.] 2011, no pet.) (Frost, J., concurring) (describing the "difficulties of determining the appellate procedure for appeals from orders," such as turnover orders, "that are not actually final judgments").

Hinde v. Hinde , 701 S.W.2d 637, 639 (Tex. 1985) (per curiam).

Tex. R. App. P. 25.1, 26.1.

Bahar , 330 S.W.3d at 386.

See ids="9950458" index="25" url="https://cite.case.law/sw2d/585/761/#p762">id. at 385 ; see also Lehmann v. Har-Con Corp. , 39 S.W.3d 191, 192 (Tex. 2001) (limiting its finality analysis to cases decided without a conventional trial on the merits and where "only one final and appealable judgment can be rendered").

Schultz v. Fifth Judicial Dist. Court of Appeals at Dallas , 810 S.W.2d 738, 740 (Tex. 1991), abrogated on other grounds , In re Sheshtawy , 154 S.W.3d 114 (Tex. 2004).

See James v. Hubbard , 21 S.W.3d 558, 561 (Tex. App.-San Antonio 2000, no pet.) (concluding the trial judge did not orally render judgment because he "never ordered, rendered, or granted" but rather "only told the parties he was 'going' to grant coupled with a request for a 'final' " judgment (citing S & A Restaurant Corp. v. Leal , 892 S.W.2d 855, 857 (Tex. 1995) (per curiam) ) ). Compare Araujo v. Araujo , 493 S.W.3d 232, 236 (Tex. App.-San Antonio 2016, no pet.) ("A judge's intention to render judgment in the future is not a present rendition of judgment. Thus, the words, 'I am going to grant the divorce in this case,' and the words, 'The Court will approve the agreement,' ... standing alone, do not indicate a present rendition of judgment." (internal citations omitted) ), with Keim v. Anderson , 943 S.W.2d 938, 942-43 (Tex. App.-El Paso 1997, no pet.) (finding the trial court's present intent was indicated when the judge said, "I will grant the divorce as of this time " (emphasis added) ).

See Madeksho v. Abraham, Watkins, Nichols & Friend , 112 S.W.3d 679, 686 (Tex. App.-Houston [14th Dist.] 2003, pet. denied) (en banc) (plurality opinion) (noting that when funds subject to a dispute are tendered into the court's registry, further orders are necessary as the court "cannot simply toss the money back out the clerk's window," even in a post-judgment enforcement proceeding where attorneys presented opposing claims to registry funds pursuant to their contingency-fee agreements).

See Ex parte Swate , 922 S.W.2d 122, 125-26 (Tex. 1996) (Gonzalez, J., concurring) (arguing that a court cannot issue a turnover order against a non-judgment debtor or stranger to the lawsuit, and rather than utilizing turnover orders as "a shortcut to bypass proceedings that afford third parties due process," a judgment creditor must make use of such "other initial proceedings").

See Beaumont Bank, N.A. v. Buller , 806 S.W.2d 223, 227 (Tex. 1991) ("The purpose of the turnover proceeding is merely to ascertain whether or not an asset is in the possession of the judgment debtor or subject to the debtor's control.... Texas courts do not apply the turnover statute to non-judgment debtors." (citations omitted) ); see also Woody K. Lesikar Special Tr. v. Moon , No. 14-10-00119-CV, 2011 WL 3447491, at *6 (Tex. App.-Houston [14th Dist.] Aug. 9, 2011, pet. denied) (mem. op.) (holding that because the turnover statute does not authorize courts to decide the parties' substantive rights, "the trial court had no discretion to 'skip the trial on the merits ... and declare [a party] the winner' " (alteration in original) (citations omitted) ).

See Lozano v. Lozano , 975 S.W.2d 63, 68 (Tex. App.-Houston [14th Dist.] 1998, pet. denied) (prohibiting use of turnover proceedings to determine the parties' and non-judgment debtor's substantive rights); see also In re Old Am. Cty. Mutual Fire Ins., Co. , No. 13-14-00231-CV, 2014 WL 4795923, at *5 (Tex. App.-Corpus Christi Sept. 25, 2014, orig. proceeding) (mem. op.) (noting a trial court's authority in a turnover hearing is limited by its inability to decide the parties' substantive rights and its lack of authority to decide third parties' rights (citations omitted) ).

Compare Schultz v. Fifth Judicial Dist. Court of Appeals at Dallas , 810 S.W.2d 738, 740 (Tex. 1991) (deciding the finality issue and, in dicta, reasoning that turnover orders could involve third party's interests and aggrieve a third party), abrogated on other grounds , In re Sheshtawy , 154 S.W.3d 114 (Tex. 2004), with Beaumont Bank , 806 S.W.2d at 227 (concluding the turnover statute cannot be applied to non-judgment debtors because it is a purely procedural device, and reversing the trial court for entering a turnover order against someone in both her individual and legal representative capacities when she was a judgment debtor only in her representative capacity).

See, Maiz v. Virani , 311 F.3d 334, 343 (5th Cir. 2002) (identifying uncertainty among Texas trial courts over how aggressively they can enforce "turnover orders which affect the rights of non-judgment debtors [a]s reflected in the conflicting decisions of the lower Texas appellate courts"); Old Am. Cty. , 2014 WL 4795923, at *5 n.4 ("Courts, including our own, have had some difficulty in construing the Texas Supreme Court's decisions regarding the application of the turnover statute to third parties."). Compare Mitchell v. Turbine Res. Unlimited, Inc. , 523 S.W.3d 189, 200 (Tex. App.-Houston [14th Dist.] 2017, pet. denied) (concluding the trial court could adjudicate substantive ownership rights of a non-judgment debtor who intervened in the proceeding), Barrera v. State , 130 S.W.3d 253, 260 (Tex. App.-Houston [14th Dist.] 2004, no pet.) (permitting an exception to the general rule by allowing turnover proceedings to enter against non-judgment debtors if "the trial court makes a factual finding that the property ... is subject to the possession or control of the judgment debtor, even if retained by a third party" (quoting Plaza Court, Ltd. v. West , 879 S.W.2d 271, 276-77 (Tex. App.-Houston [14th Dist.] 1994, no writ) ) ), Burns v. Miller, Hiersche, Martens & Hayward, P.C. , 948 S.W.2d 317, 324 (Tex. App.-Dallas 1997, writ denied) (allowing trial courts to order property turned over even if a third party holds the property if the court "makes a factual finding that the property is subject to the possession or control of the judgment debtor" (citations omitted) ), and Norsul Oil & Min. Ltd. v. Commercial Equipment Leasing Co. , 703 S.W.2d 345, 349 (Tex. App.-San Antonio 1985, no writ) (affirming a turnover order's application to stock held by a non-judgment debtor because the shares were subject to the judgment debtor's possession or control), with In re deShetler , No. 09-17-00031-CV, 2017 WL 1173811, at *4 (Tex. App.-Beaumont Mar. 30, 2017, orig. proceeding) (per curiam) (mem. op.) ("When there is a factual dispute as to the ownership interest of the judgment debtors, the trial court needs to hold an evidentiary hearing prior to entering a turnover order to establish the ownership."), and Bay City Plastics, Inc. v. McEntire , 106 S.W.3d 321, 325 (Tex. App.-Houston [1st Dist.] 2003, pet. denied) (endorsing ownership determinations in turnover proceedings so long as the decision will not bind third parties), with Resolution Tr. Corp. v. Smith , 53 F.3d 72, 80 (5th Cir. 1995) (concluding a judgment debtor's attorney's stock ownership should have first been determined in another proceeding that decided the validity of an agreement pledging the stock as payment for legal services, and reasoning that if a party's substantive rights are not the proper subject in a turnover proceeding, then clearly "a party not even before the court cannot have its rights determined via the turnover proceeding"), Old Am. Cty. , 2014 WL 4795923, at *5 (identifying two limits on a trial court's authority in a turnover hearing to be an inability to decide the parties' substantive rights and a lack of authority to decide third parties' rights, but providing for enforcement of judgments against third parties following a separate suit alleging a basis for such enforcement (citations omitted) ), In re Karlseng , No. 05-14-00049-CV, 2014 WL 1018321, at *3 (Tex. App.-Dallas Feb. 12, 2014, orig. proceeding) (mem. op.) (restricting turnover proceedings to their pure procedural purpose, and concluding a trial court could not order property turned over when a third party claimed an ownership interest in the property), Gerjets v. Davila , 116 S.W.3d 864, 868-70 (Tex. App.-Corpus Christi 2003, no pet.) (holding the trial court abused its discretion by ordering an executive to turn over assets without first bringing a separate proceeding to pierce the corporate veil), Parks v. Parker , 957 S.W.2d 666, 668 (Tex. App.-Austin 1997, no writ) (regarding this Court's decision in Beaumont Bank as reaching the decision that best comports with the literal language used in the turnover order, and declining to follow other appellate courts that hold otherwise), and Cravens, Dargan & Co. v. Peyton L. Travers Co., Inc. , 770 S.W.2d 573, 576-77 (Tex. App.-Houston [1st Dist.] 1989, writ denied) ("As the turnover statute is purely a procedural tool, it is not a device through which we can determine the ownership of the deposited funds.").

See Breazeale v. Casteel , 4 S.W.3d 434, 437 (Tex. App.-Austin 1999, pet. denied) ("[I]ntervention is not necessarily barred after the trial court has rendered final judgment where the intervenor does not attack the substance of the judgment itself, but merely seeks to protect his interest in property that is the subject of a turnover motion.").

Cre8 Int'l, LLC v. Rice , No. 05-14-00377-CV, 2015 WL 3492629, at *3 (Tex. App.-Dallas June 3, 2015, no pet.) (mem. op.).

Id.

In re deShetler , 2017 WL 1173811, at *5.

Id. at *4-5.

Id.

Id. at *5.

Mitchell v. Turbine Res. Unlimited, Inc. , 523 S.W.3d 189, 200 (Tex. App.-Houston [14th Dist.] 2017, pet. denied).

Schultz v. Fifth Judicial Dist. Court of Appeals at Dallas , 810 S.W.2d 738, 740 (Tex. 1991), abrogated on other grounds , In re Sheshtawy , 154 S.W.3d 114 (Tex. 2004).

See id. at 738 ("[A] post-judgment turnover order is an appealable final judgment ....").

See id. at 740 ("The turnover order at issue in this case resolved the property rights issues and acted as a mandatory injunction .... We therefore hold that the turnover order was in the nature of a mandatory injunction and was appealable." (emphasis added) (footnote omitted) ).

See Burns v. Miller, Hiersche, Martens & Hayward, P.C. , 909 S.W.2d 505, 506 (Tex. 1995) (per curiam).

E.g. , Gerjets v. Davila , 116 S.W.3d 864, 869-70 (Tex. App.-Corpus Christi 2003, no pet.) (citing Int'lPaper Co. v. Garza , 872 S.W.2d 18, 19 (Tex. App.-Corpus Christi 1994, orig. proceeding) ).

See Fe Express, LLC v. Contreras , No. 04-16-00723-CV, 2016 WL 7445014, at *1 (Tex. App.-San Antonio Dec. 28, 2016, pet. dism'd) (Chapa, J., dissenting) ("A turnover order in the nature of an injunction is a final judgment ...." (emphasis added) ); Black v. Shor , 443 S.W.3d 170, 176-79 (Tex. App.-Corpus Christi 2013, no pet.) (assessing the finality of several turnover orders by evaluating whether each order acted as a mandatory injunction); Bahar v. Lyon Fin. Servs., Inc. , 330 S.W.3d 379, 387 (Tex. App.-Austin 2010, pet. denied) ("[T]he court may render a number of amended turnover orders, all of which could be final, appealable judgments if they satisfy Schultz's test by acting as mandatory injunctions." (citing Arndt v. Farris , 633 S.W.2d 497, 499 (Tex. 1982) (orig. proceeding) ) ); Kennedy v. Hudnall , 249 S.W.3d 520, 524 (Tex. App.-Texarkana 2008, no pet.) (construing the phrase "in the nature of a mandatory injunction" to mean that the turnover order placed the burden of producing property on the judgment debtor (citations omitted) ).

See, e.g. , Schultz , 810 S.W.2d at 740 (comparing the turnover order to other orders in the nature of a mandatory injunction, and concluding the "order at issue in this case" was appealable since it "resolved the property rights issues and acted as a mandatory injunction as to the judgment debtor"); Fe Express , 2016 WL 7445014, at *1 (Chapa, J., dissenting) (noting "[a] turnover order in the nature of an injunction is a final judgment" (emphasis added) ).

See Kennedy , 249 S.W.3d at 524 (concluding "turnover order" was a misnomer and that the order failed to serve as a mandatory injunction).

See Black , 443 S.W.3d at 176 (indicating a trial court can enter many "turnover orders, all of which could be final, appealable judgments if they act as mandatory injunctions" (emphasis added) ).

Cf. Kennedy , 249 S.W.3d at 524 (declining to view an order as a mandatory injunction because it did not require the judgment debtor or transferee to take any affirmative action); see also Whatley v. King , 151 Tex. 220, 249 S.W.2d 57, 58 (1952) (deeming an order to deliver personal property to an opposing party a final judgment because it was, "in effect, a mandatory injunction"); Pilot Eng'g Co. v. Robinson , 470 S.W.2d 311, 312 (Tex. Civ. App.-Waco 1971, no writ) ("An order directing a party to deliver certain described personal property is 'in effect a mandatory injunction,' and is appealable." (quoting Whatley , 249 S.W.2d at 58) ).

See Prodeco Expl., Inc. v. Ware , 684 S.W.2d 199, 201 (Tex. App.-Houston [1st Dist.] 1984, no writ) (citing Wood v. Wood , 585 S.W.2d 761, 762 (Tex. Civ. App.-Houston [1st Dist.] 1979, writ dism'd) ).

See ids="9950458" index="84" url="https://cite.case.law/sw2d/585/761/#p762">id.

Id.

Id.

See Zhao v. XO Energy LLC , 493 S.W.3d 725, 735 (Tex. App.-Houston [1st Dist.] 2016, no pet.) (categorizing pretrial orders to deposit funds subject to competing claims into the registry to satisfy a potential judgment as interlocutory, non-appealable orders); see also Diana Rivera & Assocs., P.C. v. Calvillo , 986 S.W.2d 795, 796 (Tex. App.-Corpus Christi 1999, pet. denied) (distinguishing cases that held orders requiring a party to deliver property to another party were mandatory injunctions because those orders effectively adjudicated the parties' rights, and holding an order directing funds into the registry "does not finally adjudicate the rights of the parties" but merely protects funds pending final disposition of the case); Pilot Engineering , 470 S.W.2d at 312 (classifying an order to place cashier's checks, which are personal property, into the registry as a mandatory injunction (quoting Whatley , 249 S.W.2d at 58 ) ).

See Madeksho v. Abraham, Watkins, Nichols & Friend , 112 S.W.3d 679, 686 (Tex. App.-Houston [14th Dist.] 2003, pet. denied) (plurality opinion) (en banc) (pointing out that when funds subject to dispute are tendered into the court's registry during the pendency of post-judgment enforcement proceedings, further orders resolving the ownership dispute are necessary as the court "cannot simply toss the money back out the clerk's window").

Cf. Beeler v. Fuqua , No. 09-07-358-CV, 2007 WL 2962799, at *2 (Tex. App.-Beaumont Oct. 11, 2007, pet. denied) (mem. op.) (concluding an order to release funds from the court's registry was not inconsistent with the final, un-appealed judgment that awarded the party those funds and, thus, the order to disburse the funds was not subject to appeal because it "did not materially change the substantive provisions of the judgment").

See Burns v. Miller, Hiersche, Martens & Hayward, P.C. , 909 S.W.2d 505, 506 (Tex. 1995) (per curiam) (reversing a court of appeals' dismissal of an appeal from a turnover order because it was a final judgment and timely appealed, and remanding the case to the court for consideration of the appeal's merits).