

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JAMES E. WHITE, IV, Individually and as Beneficiary of the JANE WHITE TRUST; MARTI WHITE WRIGHT, Individually and as a Beneficiary of the JANE WHITE TRUST; and CLINTON WESLEY WHITE, Individually and as a Beneficiary of the JANE WHITE TRUST, by and through his Next Friend, JAMES E. WHITE, IV and JAMES WHITE, III, Individually and as TRUSTEE of the JANE WHITE TRUST, | § § § § § § | |
| | § | No. 08-23-00244-CV |
| | § | Appeal from the |
| Appellants, | § | 394th Judicial District Court |
| v. | § | of Presidio County, Texas |
| EDWARD McMINN WHITE, Individually and as Trustee of the EDWARD McMINN WHITE TRUST, and BEAUREGARD BRITE WHITE, Individually and as Trustee of the BEAUREGARD BRITE WHITE TRUST and SUSAN COMBS, Temporary Interim Trustee of the WHITE DIVISION TRUSTS. | § § § § § | (TC# 7856A) |
| Appellees. | § | |

## MEMORANDUM OPINION

This is an appeal from the trial court's order in which it (1) appointed a "temporary interim"

trustee to a family trust after removing the appointed trustee and (2) granted other equitable relief

with respect to the trust's administration. Because we conclude that the trial court's order is neither

a final, appealable judgment nor an interlocutory order from which an appeal is authorized by statute, we dismiss the appeal for want of jurisdiction.

## I. BACKGROUND

### A. The Jane White Trust

This is the second of two opinions we issue today in the ongoing family dispute over the administration of the Jane White Trust (the White Trust), whose primary asset is the Brite Ranch (the Ranch) in West Texas. The facts are laid out in our first opinion, where we explained that in 2008, the original trustee of the White Trust—a corporate entity—hired Appellant James E. White, III (Jim) to serve as the general manager of the Ranch, with a salary of $5,000 a month plus various other benefits, to include living on the Ranch with his family. The successor trustee, Jane White, ratified Jim's employment agreement and, according to Jim, also ratified his decision to hire three family members to help operate the Ranch. After Jane's death in 2010, Jim became the trustee of the White Trust. Jim continued as the Ranch general manager after his trustee appointment, in essence ratifying the prior written contract under which he had been hired, but without formally disclosing the contract to his three siblings who, along with Jim, are the White Trust income beneficiaries. As trustee, Jim also continued to compensate his family members for their employment on the Ranch.

### B. The trust litigation

In 2018, two of Jim's siblings, Appellees Edward McMinn White (Mac) and Beauregard Brite White (Beau), sued Jim for alleged breaches of his fiduciary duties as trustee of the White Trust. They sought actual and exemplary damages, Jim's removal as trustee, and a trust modification that would allow the income beneficiaries to sell the ranchlands. That case was docketed as Cause Number 7856 in the trial court. Following a jury trial in that case, the trial court

2

issued a Final Judgment Nunc Pro Tunc, which, among other things, awarded actual damages "on behalf of the trustee of the Trust" against Jim; awarded exemplary damages to Mac and Beau; removed Jim as trustee and prohibited him from taking any additional action as trustee; and modified the White Trust, dividing it into four "Division Trusts" to be administered by Jim, Mac, Beau, and their sister, Hester Ann White Tyler (only a nominal party in the suit), as trustees of their respective trusts, and giving them the right to partition and sell their interests in the White Trust's assets, including the ranchlands. The Final Judgment Nunc Pro Tunc stated that the trial court was "retain[ing] continuing judicial supervision over the Jane White Trust pursuant to the Texas Trust Code, Section 115.001(c) until such time as all aspects of this Judgment have been fully implemented."[1]

### C. The September 3 order

Jim filed a motion for instruction, asking the court, among other things, how to address the White Trust's financial and other immediate needs given the Final Judgment Nunc Pro Tunc.[2] In response to the motion, Mac and Beau urged the trial court to terminate Jim and his family's employment at the Ranch and appoint an "interim trustee" with several enumerated powers. The proposed powers and duties included: marshaling and collecting all trust assets and paying all trust debts; investing liquid assets pursuant to the Prudent Investor Act; liquidating all trust assets, including cattle, equipment, and the ranchlands themselves; and acting in the capacity of a "fee simple owner" subject to the fiduciary duties applicable to trustees under Texas law.

---

[1] Section 115.001(c) provides: "The court may intervene in the administration of a trust to the extent that the court's jurisdiction is invoked by an interested person or as otherwise provided by law. A trust is not subject to continuing judicial supervision unless the court orders continuing judicial supervision." Tex. Prop. Code Ann. § 115.001(c).

[2] In his motion, Jim explained that the White Trust's primary income came from its cattle operations and hunting leases on the Ranch, and to continue such operations, he needed to pay the Ranch employees and vendors. The First National Bank of Stockton had declared a default on a line of credit the Ranch had been using for its operating costs.

In response, the trial court issued the order that is the subject of the current appeal, which we refer to as the September 3 Order. In the September 3 Order, the trial court appointed Susan Combs as "temporary interim trustee" of the Division Trusts, empowering her to, among other things, collect all assets of the Division Trusts, including all interests in the Ranch; liquidate the cattle and pay debts of the Division Trusts owed to a bank in Fort Stockton; invest and reinvest all liquid assets of the Division Trusts; and employ persons reasonably necessary to assist in administering the estates of the Division Trusts. The September 3 Order gave Ms. Combs all the "powers of a fee simple owner" in this role.

The September 3 Order specified that Ms. Comb's temporary interim trustee tenure "shall end at the conclusion of the hearing to appoint an Interim Trustee." Ms. Combs has since resigned from the temporary interim trustee position, and Mac and Beau filed a motion to dismiss this appeal as moot in light of her resignation. There is nothing in the record to indicate that the trial court appointed an "Interim Trustee" upon her resignation.

The September 3 Order granted Mac and Beau's request for "other equitable relief," which included terminating Jim and his family's employment at the Ranch and further ordered Jim and his family to cease residing at the Ranch. The trial court then severed these proceedings into a separate cause number: 7856A.

### D. The various appeals

Three of Jim's children, who are contingent beneficiaries of the White Trust (two of whom were employed at the Ranch) filed a petition to intervene in both cause numbers (the Intervenors). Thereafter, Jim and the Intervenors filed separate notices of appeal from the trial court's Final Judgment Nunc Pro Tunc (docketed in this Court as 08-23-00243-CV) and from the September 3 Order (docketed in this Court as 08-23-00244-CV). In our opinion in 08-23-00243-CV, we found

4

that a fundamental error in the jury charge caused the rendition of an improper verdict on Jim's breach of fiduciary duties, which required us to reverse the Final Judgment Nunc Pro Tunc in its entirety and remand for a new trial. But as to the September 3 Order, we find that it is not an appealable order and we thus have no jurisdiction over this appeal.

## II. THE APPEALABILITY OF THE SEPTEMBER 3 ORDER

### A. Applicable law

In general, a final judgment "disposes of all legal issues between the parties." *See Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992) (citation omitted). Conversely, an interlocutory order "leaves something further to be determined and adjudicated in disposing of the parties and their rights." *Taliaferro v. Texas Commerce Bank*, 660 S.W.2d 151, 152 (Tex. App.—Fort Worth 1983, no writ) (citation omitted). In general, "Texas appellate courts have jurisdiction only over final orders or judgments unless a statute permits an interlocutory appeal." *Ogletree v. Matthews*, 262 S.W.3d 316, 319, n.1 (Tex. 2007) (citing *Jack B. Anglin Co.*, 842 S.W.2d at 272); *see also Ruebbling v. Foremost Cnty. Mut. Ins. Co.*, 658 S.W.3d 611, 612 (Tex. App.—El Paso 2022, no pet.) (recognizing that "unless otherwise permitted by statute, appeals may only be had from final orders or judgments").

### B. Analysis

#### (1) The September 3 Order is not a final judgment.

The parties appear to agree that the September 3 Order is an interlocutory order that must fall within an exception authorized by statute to be appealable.[3] We agree.

---

[3] Initially, the Intervenors argued that the order was a final order, but in their reply brief, they characterize it as an appealable interlocutory order.

The September 3 Order expressly contemplated that the trial would hold additional proceedings to appoint an "interim trustee." The September 3 Order does not contain any language of finality or provide any indication that the court intended to dispose of all parties and claims in its order that would make it a final order. *See generally Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001) (providing that a trial court's order must dispose of all parties and claims to be final, or in the alternative, contain language indicating its clear intent to render a final judgment). Accordingly, we categorize the September 3 Order as interlocutory and next consider Jim and the Intervenors' contention that two statutory provisions authorize an appeal from the order.

### (2) The order is not an appealable interlocutory order under § 51.014(a)(1).

Jim and the Intervenors maintain that the portion of the September 3 Order appointing Ms. Combs as interim trustee is appealable under Texas Civil Practice & Remedies Code § 51.014(a)(1), which provides: "[a] person may appeal from an interlocutory order of a district court . . . that . . . appoints a receiver or trustee[.]" Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(1). As we have previously held, however, the exception to the finality rule in § 51.014(a)(1) only applies in situations in which a trial court has appointed a trustee in the first instance, not when it has appointed a successor trustee or receiver. *Urbanovsky v. Urbanovsky*, No. 08-21-00182-CV, 2022 WL 12403922, *2–3 (Tex. App.—El Paso Oct. 21, 2022, no pet.) (mem. op.) (citing *Clark v. Clark*, 638 S.W.3d 829, 837 (Tex. App.—Houston [14th Dist.] 2021, no pet.); *Haluska v. Haluska-Rausch*, No. 03-11-00312-CV, 2012 WL 254639, at *2 (Tex. App.—Austin Jan. 24, 2012, no pet.) (mem. op.); *Matter of Guardianship of Tipps*, No. 05-14-01495, 2016 WL 1552007, at *2 (Tex. App.—Dallas Apr. 15, 2016, pet. denied) (mem. op.); *Epstein v. Hutchinson*,

No. 01-03-00797-CV, 2004 WL 1689685, at *2 (Tex. App.—Houston [1st Dist.] July 23, 2004, pet. denied) (mem. op.)).

The Intervenors seek to distinguish our holding in *Urbanovsky* by urging us to treat Ms. Combs as the "original trustee" of the Division Trusts, rather than as a successor trustee.[4] They point out that the Division Trusts were newly created, and they argue that although the final judgments appointed the White siblings as trustees of their own trusts, none of the siblings had accepted their appointments at the time of the September 3 Order, which they believe Trust Code § 112.009 required. They therefore urge us to conclude that none of the siblings had served as a trustee in the first instance, thereby making Ms. Combs the original trustee. We decline to draw that conclusion.

Trust Code § 112.009 provides that a trustee's signature on a written document is "conclusive evidence that the person accepted the trust." Tex. Prop. Code Ann. § 112.009(a). The Code further provides that a "person named as trustee who exercises power or performs duties under the trust is presumed to have accepted the trust[.]" *Id.* Since receiving their appointments, Mac and Beau have both exercised powers as trustees of their respective Division Trusts, in part by filing pleadings in that capacity, including their pleadings seeking to oust Jim and appoint Ms. Combs. As such, in the absence of any evidence to the contrary, we will presume that Mac and Beau accepted their appointments as trustees of their Division Trusts and were acting as such at the time of Ms. Combs's appointment as temporary interim trustee.

In a similar situation, a trial court appointed siblings to serve as trustees in place of their father but subsequently appointed an "interim" trustee to address claims that the siblings were not

---

[4] The Intervenors also take issue with *Urbanovsky* and other cases from our sister courts interpreting § 51.014(1)(a) as applicable only to original trustees. They argue that no statutory construction, legislative purpose, or underlying supporting caselaw from the receivership context further this interpretation.

7

properly administering the trust. *Haluska*, 2012 WL 254639, at *1. Our sister court held that the interim trustee could not be considered the original trustee, given the existence of both the former and current trustees, and the trial court's order appointing the interim trustee was the equivalent of appointing a successor trustee or receiver. *Id*. at *2. The court therefore held that the order could not be considered an appealable interlocutory order under § 51.014(a)(1). *Id.*

Here too, we conclude that Ms. Combs cannot be characterized as the "original trustee" of the Division Trusts, as the trial court had previously appointed the siblings. Accordingly, the portion of the order appointing Ms. Combs as temporary interim trustee is not appealable under § 51.014(a)(1).

**(3) The Order is not an appealable interlocutory order under § 51.014(a)(4).**

In the alternative, Jim and the Intervenors contend the September 3 Order can be characterized as an order granting a temporary injunction, which is appealable under Texas Civil Practice & Remedies Code § 51.014(a)(4). Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) ("[a] person may appeal from an interlocutory order of a district court [which] grants . . . a temporary injunction . . ."). We do not believe the order can be characterized as such.

When we consider whether an order is a temporary injunction and therefore appealable, matters of form do not control over "the nature of the order itself—it is the character and function of an order that determine its classification." *Matter of Estate of Fenenbock*, No. 08-23-00146-CV, 2024 WL 1340564, at *6 (Tex. App.—El Paso Mar. 28, 2024, no pet.) (mem. op.) (citing *Del Valle Indep. Sch. Dist. v. Lopez*, 845 S.W.2d 808, 809 (Tex. 1992); *In re Texas Nat. Res. Conservation Comm'n*, 85 S.W.3d 201, 205 (Tex. 2002) (orig. proceeding) ("Whether an order is . . . an appealable temporary injunction depends on the order's characteristics and function, not its title.")). "A temporary injunction's purpose is to preserve the status quo of the litigation's subject

8

matter pending a trial on the merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002)). Generally, the status quo to be preserved by a temporary injunction is "the last, actual, peaceable, non-contested status which preceded the pending controversy." *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (orig. proceeding). "There are two general types of temporary injunctions: a prohibitive injunction, which forbids conduct, and a mandatory injunction, which requires it." *Fenenbock*, 2024 WL 1340564, at *6 (citation omitted).

Jim and the Intervenors maintain that appointing Susan Combs and issuing "other equitable relief" can be characterized as granting a temporary injunction. Because a party may appeal from a portion of an order granting a temporary injunction—even if other provisions in the order do not grant such relief—we must examine both portions to determine § 51.014(a)(4) appealability. *See Clark*, 638 S.W.3d at 837 ("To the extent the trial court grants a temporary injunction as well as non-injunctive relief that is not appealable, this statute provides for an interlocutory appeal only from the part of the order granting the temporary injunction.") (citing *Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co.*, 540 S.W.3d 577, 587–88 (Tex. 2018)). We conclude that neither portion of the order can be characterized as a temporary injunction under § 51.014(a)(4).

First, the portion of the order appointing Susan Combs as temporary interim trustee was simply a declaration that Ms. Combs was to serve in that capacity with defined duties, and it did not enjoin her from engaging in any particular conduct, nor did it command her to perform a certain act. *Id.* at 838 (recognizing that an order appointing a successor cotrustee under the terms of a will could not be considered a temporary injunction as the order did not forbid the trustee from engaging in any conduct or command him to take an action). Moreover, the order appointing Ms. Combs as temporary interim trustee did not preserve the status quo until a trial could be held.

9

To the contrary, the trial court gave Ms. Combs broad powers to alter the status quo by liquidating and reinvesting assets in her administration of the trusts. The order therefore did not function in any respect as a temporary injunction.

Second, the portion of the September 3 Order granting "other equitable relief," which terminated the employment of Jim and his family and ordered them to cease living on the Ranch, cannot be characterized as a temporary injunction. Once again, this portion of the order was not directed at preserving the status quo until such time as a trial could be held. Instead, the order altered the status quo by permanently firing the family and causing them to leave the Ranch with no indication that the court intended to hold a trial at some future date regarding whether their employment or residence could be reinstated. *See Leighton v. Rebeles*, 343 S.W.3d 270, 273 (Tex. App.—Dallas 2011, no pet.) (recognizing that a temporary injunction order must set a trial date to prevent the injunction from effectively becoming permanent); *see also* Tex. R. Civ. P. 683 ("Every order granting a temporary injunction shall include an order settng the cause for trial on the merits with respect to the ultimate relief sought.").[5] We therefore conclude that the September 3 Order did not function—nor was it intended to function—as an order granting a temporary injunction that would be appealable under Texas Civil Practice & Remedies Code § 51.014(a)(4).

---

[5] We recognize that when an order truly functions as a temporary injunction, failure to set the case for trial will not change its character, and instead an appellate court should review the order to determine if it is void due to the lack of a trial date. *See generally Qwest Commc'ns Corp. v. AT & T Corp.*, 24 S.W.3d 334, 337–38 (Tex. 2000) (recognizing that pursuant to Texas Rule of Civil Procedure 683, all orders granting a temporary injunction are required to include an order setting the cause for trial on the merits; failure to do so renders the temporary injunction void but does not deprive an appellate court of jurisdiction to hear an appeal from the order).

## III. Conclusion

Having concluded that the September 3 Order is neither a final order disposing of all parties and claims nor an interlocutory order from which an appeal is authorized by statute, we dismiss the appeal for want of jurisdiction.[6]

LISA J. SOTO, Justice

December 19, 2024

Before Alley, C.J., Palafox and Soto, JJ.

---

[6] Because we have no jurisdiction over the appeal, we do not address the pending motions.

11