

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00133-CV

_____

WAYMON HARTWELL A/K/A SCOTT HARTWELL, Appellant

V.

THE FUNDWORKS, LLC AND JORDAN CATTLE AUCTION, Appellees

On Appeal from County Court at Law No. 2
Denton County, Texas
Trial Court No. CV-2021-03523

Before Kerr, Bassel, and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

In this ongoing dispute, Appellant Waymon Hartwell a/k/a Scott Hartwell appeals from the trial court's order granting a motion to interplead funds. In his sole issue, Hartwell argues that the trial court lacked jurisdiction to determine the interpleader action. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

HHH Cattle LLC entered into a commercial loan and security agreement with The Fundworks, LLC. Hartwell signed the agreement as the authorized representative for HHH Cattle and also as a personal guarantor on the loan. When payment was not made on the loan, Fundworks filed suit against HHH Cattle and Hartwell for breach of contract and breach of personal guaranty. After the suit was filed, HHH Cattle filed for bankruptcy, and—on Fundworks' motion—the trial court entered an order of nonsuit as to HHH. Fundworks then filed an amended petition against Hartwell for breach of personal guaranty.

The trial court granted Fundworks's motion for summary judgment on July 5, 2022, and ordered that Fundworks recover from Hartwell $168,214.27. The summary-judgment order was subsequently abstracted.

On January 4, 2023, Fundworks filed a motion for turnover relief and the appointment of a receiver to support the turnover order. Fundworks also filed an application for a charging order to collect from HH Land, LLC, alleging that Hartwell was the managing member of HH Land. The trial court signed a charging order on

January 30, 2023, granting Fundworks's application and ordering that Hartwell's interests in HH Land were charged to satisfy the July 5, 2022 judgment. A couple of weeks later, the trial court issued a turnover order and appointed Craig Noack as receiver. Two weeks after that, Fundworks filed a second application for a charging order against H3 Cattle, LLC,[1] again alleging that Hartwell was the sole member of H3 Cattle. The trial court signed a second charging order on March 2, 2023, enjoining H3 Cattle from distributing any amounts to Hartwell and requiring H3 Cattle to distribute any and all amounts owed to Hartwell directly to Noack.

On May 5, 2023, Hartwell[2] filed "Defendants' (i) Motion to Vacate, (ii) Motion for Reconsideration, (iii) Motion to Clarify, (iv) Motion to Modify, and (v) Objections. In that filing, Hartwell argued that because the summary judgment was not final, both charging orders were improper and unenforceable. Hartwell further challenged the terms of the turnover order and the appointment of Noack as receiver. The trial court denied the relief sought in Hartwell's filing.

Hartwell appealed the trial court's turnover order to this court. We concluded that the trial court's July 5, 2022 summary-judgment order was a final judgment. *Hartwell v. Fundworks, LLC*, No. 02-23-00100-CV, 2024 WL 46053, at \*4–5 (Tex. App.—Fort Worth Jan. 4, 2024, pet. denied) (mem. op.). This court modified the

---

[1]H3 Cattle is a separate entity from HHH Cattle.

[2]Although Hartwell's filing named HHH as a defendant, the trial court had entered an order of nonsuit for HHH Cattle.

3

turnover order as it related to the receiver's fees and affirmed the turnover order as modified. *Id.* at *8, *10.

On February 18, 2023, Hartwell took several cows to Jordan Cattle Auction to be auctioned off on behalf of H3 Cattle. The cattle were sold, resulting in net proceeds of $395,207.77. Prior to releasing the funds, Jordan Cattle received notification that the funds might be subject to the trial court's turnover order. Noack sent a demand letter requesting Jordan Cattle to turn over the proceeds from the February 18 sale. After receiving Noack's demand letter, Jordan Cattle also received calls from Hartwell inquiring why the funds had not been released to him.

Jordan Cattle filed an interpleader action in the district court in San Saba, Texas, where the cattle were sold, against Fundworks, H3 Cattle, Hartwell, and Noack. Noack filed a special appearance, and the San Saba district court granted that motion. The San Saba district court found that it lacked jurisdiction over the funds based upon the trial court's turnover order and charging order. The San Saba district court dismissed the interpleader action without prejudice.

Jordan Cattle and Noack filed a joint interpleader action in Denton County under the original cause number. Jordan Cattle requested that the trial court allow an interpleader of the funds by tendering said funds to the clerk or receiver. After a hearing, the trial court orally granted the motion. The trial court held a separate hearing on Jordan Cattle's attorney's fees. The trial court signed an order on February 12, 2024, granting the interpleader and ordering the funds deposited in the

4

county clerk's registry. Hartwell appeals from that order and argues that the trial court lacked jurisdiction to determine the interpleader.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

A trial court's determination of jurisdiction raises a question of law that we review de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding); *EcoProduct Sols., L.P. v. ENGlobal Eng'g, Inc.*, No. 01-10-00366-CV, 2011 WL 2624003, at *4 (Tex. App.—Houston [1st Dist.] June 30, 2011, pet. denied) (mem. op.) (citing *In re Fleetwood Homes of Tex., L.P.*, 257 S.W.3d 692, 694 (Tex. 2008) (orig. proceeding)).

An interpleader suit offers one who holds property a means to interplead or bring "into one action all of the claimants" to that property, turn the "property over to the court, be himself dismissed from the proceeding, and have the court decide which of the claimants is entitled to the . . . property." *Bill of Interpleader*, Black's Law Dictionary (12th ed. 2024) (quoting William Q. de Funiak, *Handbook of Modern Equity* § 108, at 241–42 (2d ed. 1956)); *see* Tex. R. Civ. P. 43. A party is entitled to interpleader relief when it establishes three elements: (1) it is either subject to, or has reasonable grounds to anticipate, rival claims to the same funds; (2) it has not unreasonably delayed filing its action for interpleader; and (3) it has unconditionally tendered the funds into the registry of the court. *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 850 (Tex. 2018).

## III.  DISCUSSION

Jordan Cattle was aware that both Fundworks and Hartwell claimed the same funds, did not delay in filing its action, and sought to tender the funds to the court's registry.  Thus, interpleader relief was appropriate.  *Id.*  Hartwell contends, however, that the trial court's plenary power expired on October 18, 2022—thirty days after his amended motion to vacate the July 5, 2022 summary judgment was overruled by operation of law.  *See* Tex. R. Civ. P. 329b(c), (e).  He argues that because the trial court's plenary power had expired, it had no jurisdiction to determine the interpleader action.  Jordan Cattle responds that Texas courts allow parties to seek court assistance to enforce a judgment by appointing a receiver and obtaining a turnover order.

Unlike plenary power, which generally only lasts for thirty days after final judgment, a trial court's post-judgment enforcement powers "can last until the judgment is satisfied."  *Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co., L.P.*, 540 S.W.3d 577, 581 (Tex. 2018) (quoting *Black v. Shor*, 443 S.W.3d 170, 176 (Tex. App.—Corpus Christi 2013, no pet.)).  A court that appoints a receiver to assist with enforcement of a judgment retains "continuing jurisdiction and control" over the receiver and receivership property until concluding the proceeding.  *See Bowman v. The Bank of N.Y. Mellon Tr. Co.*, No. 05-13-01684-CV, 2016 WL 258765, at *4 (Tex. App.—Dallas Jan. 21, 2016, pet. denied) (mem. op.) (citing *Pratt v. Amrex, Inc.*, 354 S.W.3d 502, 504–05 (Tex. App.—San Antonio 2011, pet. denied)).

6

The trial court retained jurisdiction over the receiver, Noack, and the receivership property. *Id.* The trial court's turnover order required third parties in possession of assets that Hartwell had an ownership interest in to turn those assets over to Noack. As previously stated, this court affirmed the trial court's order appointing Noack as receiver and issuing the turnover order. *Hartwell*, 2024 WL 46053 at, *10. Thus, that order is valid, and the trial court has jurisdiction to enforce its order until the judgment is satisfied. *See Alexander Dubose*, 540 S.W.3d at 581. It follows that the trial court had plenary power to determine whether the funds in question were subject to its previous valid orders. *See Madeksho v. Abraham, Watkins, Nichols & Friend*, 112 S.W.3d 679, 686 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (en banc) (plurality op. on reh'g).

Hartwell maintains that Jordan Cattle was required to file the interpleader action in a separate lawsuit. We disagree. In *Madeksho*, the court allowed an interpleader action to be brought in the underlying cause of action. *Id.* at 688. The court reasoned that it is unclear that a separate cause of action is an adequate remedy because "[m]ost post-judgment disputes must be raised in the trial court that rendered judgment, as it is usually familiar with the case and can settle disputes more quickly." *Id.* at 688–89.

Hartwell contends that *Madeksho* conflicts with *Alexander Dubose* and should be limited to its facts. *Alexander Dubose* held that unlike plenary power—which lasts for thirty days after final judgment—a trial court's post-judgment enforcement powers

7

can last until the judgment is satisfied. 540 S.W.3d at 581. We do not find *Madeksho* to be in conflict with *Alexander Dubose*. Hartwell further contends that *Madeksho* focused only on whether the trial court had authority under the Texas Supreme Court's mandate to determine competing claims. While discussing the post-mandate claims to a judgment, the court reasoned that a separate lawsuit was not required for an interpleader action. *Madeksho*, 112 S.W.3d at 688–89. While we acknowledge that *Madeksho* was a plurality opinion, we agree with the reasoning that the trial court had jurisdiction over the interpleader action and a separate lawsuit was not required. *See id.*

Hartwell also argues that a trial court's authority to enforce its judgment does not extend to deciding substantive rights of third-party strangers to the underlying judgment. According to Hartwell, Noack, H3 Cattle, and HHH Cattle are strangers to the July 5, 2022 summary judgment. This court affirmed the turnover order that required third parties in possession of assets that Hartwell had an ownership interest in to turn those assets over to Noack. *Hartwell*, 2024 WL 46053, at *10. The trial court signed a charging order finding that Hartwell, as the sole member of H3 Cattle, has custody and control over all of the assets belonging to H3 Cattle. Hartwell did not challenge that charging order. As previously stated, the trial court had authority to appoint Noack as a receiver and retained jurisdiction over him until concluding the proceeding. *See Bowman*, 2016 WL 258765, at *4. The trial court had entered an order of nonsuit for HHH Cattle. Thus, the trial court's order granting the motion to

8

interplead funds did not decide the substantive rights of third-party strangers to the judgment.

Accordingly, we hold that the trial court had jurisdiction to determine the motion to interplead funds. *See Madeksho*, 112 S.W.3d at 690. We overrule Hartwell's sole issue.

## IV.  CONCLUSION

Having overruled Hartwell's sole issue, we affirm the trial court's order granting the motion to interplead funds.

/s/ Brian Walker

Brian Walker
Justice

Delivered:  March 20, 2025