# In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-23-00259-CV
_____

### TOM REED AND JARED WOODFILL, Appellants

### V.

### THE METHODIST HOSPITAL D/B/A THE METHODIST HOSPITAL SYSTEM, AND THE MEDICAL STAFF OF HOUSTON METHODIST THE WOODLANDS HOSPITAL, Appellees

On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 23-01-01246-CV

## MEMORANDUM OPINION

Tom Reed ("Reed" or "Plaintiff") and Jared Woodfill ("Woodfill") appeal from an order awarding Appellees The Methodist Hospital d/b/a The Methodist Hospital System, and The Medical Staff of Houston Methodist The Woodlands Hospital ("the Hospital" or "Appellees") attorney's fees as sanctions on Woodfill. We affirm.

1

Procedural History

Tom Reed, a physician (D.P.M.), filed an Original Petition against the Hospital in Harris County in June of 2022 alleging wrongful termination. The case was later transferred to Montgomery County, pursuant to the Hospital's Motion to Transfer Venue.

In April of 2023, the Hospital filed a Motion to Compel Discovery, alleging that Plaintiff has failed to verify responses, failed to answer interrogatories, and failed to provide responses to requests for production. According to the Motion, Plaintiff originally brought claims in September of 2021 against the Hospital in Montgomery County in Cause No. 21-09-12645, and after Plaintiff did not respond to the Hospital's discovery requests, the trial court granted Plaintiff's nonsuit. Thereafter, Plaintiff filed a second suit against the Hospital making the same claims in Harris County, and the case was transferred to Montgomery County as Cause No. 23-01-01246.

In its Motion to Compel Discovery the Hospital alleged that its discovery requests were "substantively identical to those served in April 2022 in the 1st Montgomery County Suit." According to the motion, after having been granted multiple extensions to respond to discovery requests, Plaintiff served his responses on March 20, 2023, but they were "overall deficient [] and contained incomplete answers and groundless objections." The Hospital further alleged that Plaintiff

produced no documents in response to the Hospital's requests for production. After counsel for the parties conferred, Plaintiff served some additional documents, but the Hospital maintained the responses were inadequate and did not correct the original deficiencies. The Hospital asked the trial court to compel Plaintiff to provide proper responses to its written discovery requests because "Plaintiff's counsel has not responded to the [Hospital's] April 13, 2023 letter with the requested responses or items." The trial court granted the motion on May 1, 2023, ordering Plaintiff to provide full and complete responses and documents within seven days of the court's order.

On May 30, 2023, the Hospital filed its Motion to Enforce Court Order and Show Cause pursuant to Texas Rule of Civil Procedure 215.2. Therein, the Hospital alleged that Plaintiff had not even attempted to comply with the trial court's May 1, 2023 Order on Defendant's Motion to Compel Discovery. The Motion to Enforce outlined the Hospital's efforts to work with Plaintiff so the Plaintiff could correct deficient responses to discovery requests from February through May of 2023, and alleged that "Plaintiff has provided no amended and/or supplemental responses to any of the Court ordered discovery requests." The Hospital asked the trial court to "issue a show cause order for Plaintiff Tom Reed, D.P.M. and Plaintiff's counsel, and that upon hearing they be held in contempt and sanctioned as requested[]" and

that the trial court award the Hospital attorney's fees and costs related thereto. A show-cause hearing was noticed on the motion for June 16, 2023.

Show-Cause Hearing

The trial court held a show-cause hearing on June 16, 2023. Neither Tom Reed (Plaintiff) nor his attorney (Jared Woodfill) appeared. The trial court made a record notation that two people, including Woodfill, at the Woodfill Law Firm were served with notice of the hearing. Counsel for the Hospital told the trial court that Woodfill had not responded to discovery requests since the trial court signed its May 1st order. Counsel for the Hospital also told the trial court that they had observed a pattern in Woodfill's practice to not respond to dispositive motions and later file a motion for new trial claiming there were other pressing matters. More specifically, counsel for the Hospital informed the trial court that Woodfill had nonsuited the cause originally filed in Harris County "to avoid the discovery[.]" The Hospital's counsel also told the trial court that in other cases in Montgomery County, they had served numerous sets of discovery, and after giving numerous extensions to respond, Woodfill non-suited the cases and refiled in Harris County, and the Hospital's attorney gave the trial court a copy of three documents from some of the cases as examples but none of those documents appear in the record.

The following exchange occurred between the trial court and the Hospital's attorney:

4

[The Court]: Mr. Woodfill has filed no response to your motion and has opted not to appear here today though he was notified to come. It suggests very strongly to me that [the Hospital] is in a very bad position in trying to litigate this case with a plaintiff who is not participating in anything. It is my review of this file that Mr. Woodfill has literally filed nothing since the transfer came over from Harris County in January of 2023. It feels that he does not wish to participate.

So my inclination is to order him to appear and show cause why he should not be forced to comply with the Court's order on civil contempt, slash, why he should not be punished for putting you-all in this position, either through an award of attorneys' fees, a criminal fine[,] or time in the Montgomery County Jail.

I'm not inclined to issue that punishment on his client. I think that the evidence that you've presented me makes it very clear that this is an attorney-driven nonparticipation, but if you have reason to believe that Tom Reed, D.P.M., is somehow responsible for any of the nonresponsiveness that you've experienced, I'll hear about it.

[Counsel for the Hospital]: I don't think so, Your Honor. . . .

[The Court]: Okay. So my inclination is not to do a show-cause order as it pertains to our plaintiff but instead only as to his attorney.

. . . It is altogether unusual to have someone completely ignore both a set of discovery requests and a court order requiring a response.

After the hearing concluded, the trial court signed a Show Cause Order. The trial court found there was sufficient cause to conclude that Jared Woodfill had violated the Order Granting Defendants' Motion to Compel Discovery and "cause to believe that Plaintiff, through his counsel, Jared Woodfill, is in contempt of this Court's Order[.]" The order required Woodfill to appear for a Show Cause Hearing on July 14, 2023, and explained that, if Woodfill was found in contempt at the July hearing, then the trial court may sentence him to up to 180 days in the Montgomery County Jail, order him to pay a $500 fine, impose sanctions requiring Woodfill to

5

pay the Hospital's attorney's fees, and/or confine him in the Montgomery County Jail under civil contempt until he fully complies. The order further required that Defendants personally serve Woodfill so that the order would effectively summon Woodfill to the scheduled contempt hearing. The appellate records include an Affidavit of Service reflecting that the Show Cause Order was personally served on Woodfill on June 27, 2023.

## Nonsuit and Contempt Hearing

On July 13, 2023, one day before the contempt hearing, Woodfill, on behalf of Plaintiff Tom Reed, filed a Motion for Nonsuit, which the trial court granted. Woodfill and Woodfill's attorney appeared at the contempt hearing, along with attorneys representing Methodist Hospital. The trial court stated that in light of the nonsuit filed by Tom Reed, it did not make sense to require Tom Reed to file responses to the discovery requests. Woodfill's personal attorney explained to the trial court that "the [Woodfill] firm had issues dealing with [Woodfill's] client in [] getting [] effective communication [] to [] cure any deficiencies[.]" According to Woodfill's attorney, the Plaintiff Tom Reed no longer seemed to be interested in litigating the matter. The trial court explained that the request for sanctions outlives a nonsuit.

Counsel for the Hospital agreed that the nonsuit extinguished any discovery disputes, but he stated that the Hospital was left with considerable attorney's fees

and that any difficulty Woodfill had in contacting his client did not excuse his failure to respond to the Motion to Compel or appear for the show-cause hearing. The Hospital's attorney also explained he had experienced Woodfill engage in the same pattern in other cases—not responding to discovery requests, then filing a nonsuit and refiling in another county. The Hospital's attorney stated, "This is not happenstance. This is pattern and practice[,]" and asked the trial court to consider the attorney's fees it had incurred in this lawsuit.

Woodfill's attorney told the trial court that Woodfill's office had lost several attorneys and paralegals and that "failure to come to the Motion to Compel was just due to the manpower within the office and things, kind of, fell off the rails[]" and was not intentionally disobedient. Woodfill told the court that the hearing was not calendared due to people leaving without notice. The trial court questioned Woodfill as follows:

> . . . you inadvertently missed the [April discovery] deadline because that's when you lost the three attorneys and four paralegals and so calendaring was difficult. Okay. I understand. Just innocent accident or mistake, but that accident or mistake happened during the month of April. It was May 1st that I signed my order about you responding to the discovery, and you missed the deadlines. I mean, you blew right past those. So, okay. Calendaring is a problem, but you've got a court order that requires responses within a week and didn't get them.
>
> So then they filed their Motion to Enforce, and I hear it two weeks later. You've been served with all of this; right? I got no response from you. And then on June 16, I heard it, which then caused me to do the show cause order.

7

Woodfill told the court that "everything we've been able to get, we've turned over[,]" but that despite multiple attempts, he had not been able to get a signed verification from the Plaintiff. According to the Hospital's attorney they had not received any supplemental discovery since the court's May 1st order. Before hearing testimony, the court stated that it was considering only sanctions and not criminal contempt, fines, nor confinement.

Woodfill's Testimony

Woodfill testified that he and his paralegal had tried repeatedly to reach their client by calls, emails, and text, but they had been unsuccessful. Woodfill was unable to recall what efforts he had taken specifically since the trial court's May 1st order. According to Woodfill, attempts to contact the client had been "very challenging" because the client was "on another venture and working on a strawberry farm," but Woodfill conceded that "ultimately it is on me. It's our fault. [] We couldn't get the documents, so I probably should have dismissed earlier." When asked what efforts he had made to let the Hospital's counsel know about the difficulties reaching his client, Woodfill replied that he understood that "Mr. Wallenwein" had been in touch with them, and although he guessed he could have brought Wallenwein with him to the contempt hearing, he did not. Woodfill also testified that he appreciated the argument that nonsuiting the case did not extinguish the Hospital's counsel's time and expense expended on the case.

8

Woodfill agreed that, in responding to some of the Hospital's interrogatories, his response was "See plaintiff's most recent petition[.]" He agreed that other responses stated, "Defendant has equal or superior access to information requested." The trial court asked Woodfill whether the failure to supplement responses was due to the fact that the client was not providing documents, and Woodfill agreed. Woodfill agreed with the trial court that rather than telling the defendants that he would supplement responses, the better approach would have been to say there were no responsive documents. Woodfill also testified that he did not call the court to say he would not be attending the show-cause hearing because he did not know there was a hearing and "I have no excuse for that." Woodfill testified that his office had lost multiple paralegals in a short amount of time, but that "it's my fault." The court asked why Woodfill did not call opposing counsel to explain the staffing challenges, and Woodfill replied, "I should have called [] about that."

Testimony by the Hospital's Attorney

An attorney for the Hospital testified about his experience and expertise and the hourly rates charged by his firm, and he agreed the rates were customarily charged in the area for the same or similar services. On cross-examination, he agreed that in working on this case, he had conferred with local counsel. He also testified about the time that he and others in his firm spent drafting and reviewing the motion to compel and motion to show cause.

A second attorney for the Hospital also testified about her experience, her billing rate, and her work on this case. She also testified, "I know of Mr. Woodfill and this seems to be a pattern of his and I was looking through Harris County records to see how he had handled this in other situations where he had failed to respond to motions." According to the second attorney, records of three other cases were offered at the show-cause hearing. She testified that Woodfill demonstrated "a pattern of not responding."

The declaration of a senior attorney at the firm representing the Hospital was also entered into evidence, which included the attorney's fees and cost incurred in this case relating to discovery and the Motion to Enforce Court Order and Show Cause.

The trial court stated from the bench,

> So I will tell you, based upon the evidence presented to me, I do find that there is sanctionable conduct that has occurred in this case. I think that the lack of participation in discovery and then in discovery motions practice and even a failure to appear in this Court - - I understand that you had things standing in your way, but I also understand that at no time did you ever contact the Court and I don't believe you ever contacted defense counsel to let him know about these troubles.
> . . .
> The key feature that I want to say out loud while I've got you here, Mr. Woodfill, you file a lawsuit, you've got to participate in them. You're lead counsel. It doesn't matter if your associate did it, if your paralegal did it, if your contract attorney did it. It doesn't matter. It all lands at your feet. . . .
> . . .

I'm going to be making an award of attorney's fees against you for that reason related to the money that they've had to spend on what could have been resolved with a phone call or a response to the Motion to Compel, letting me know that you had things going on. . . .

Order Imposing Sanctions

The trial court signed an Order Imposing Sanctions on July 14, 2023, which was superseded by an Amended Order Imposing Sanctions signed on July 22, 2023. The Amended Order Imposing Sanctions reads as follows:

> On July 14, 2023, the Court conducted a Show Cause hearing. The Court had options related to criminal contempt and civil contempt, but removed those options from the Court's purview for the hearing. Instead, the Court considered only sanctions. The Court finds that Jared Woodfill committed sanctionable conduct and the Court imposes an attorney's fee sanction on him. The Court VACATES its Order signed July 14, 2023 and replaces it with this Amended Order.
> It is ORDERED that Jared Woodfill shall pay to The Methodist Hospital System the sum of $11,645.50 as an award of its reasonable and necessary attorney's fees by no later than August 7, 2023 at 5:00 p.m. by sending payment to the office of Houston Methodist's attorneys, [attorney's address].

Plaintiff Tom Reed filed his notice of appeal on August 8, 2023, and an amended notice of appeal also listing Jared Woodfill as an appellant was filed with this Court on March 30, 2024.

Issues

Appellants raise three issues on appeal: (1) the trial court erred by holding a hearing on Appellees' enforcement action without making personal service on Appellant Reed, thereby violating Appellants' due process rights; (2) the trial court

11

erred by imposing sanctions on Appellant Woodfill by failing to direct the sanction against the discovery abuse and instead imposing it upon the offender; and (3) the trial court erred by failing to determine that the attorney's fees sanctions requested were necessary and reasonable.

Appellate Jurisdiction

*1. Parties*

In this case, the original Notice of Appeal was filed in the trial court on August 8, 2023, by Tom Reed, who was the plaintiff in the lawsuit. The Notice stated it sought to appeal "the judgment or other appealable order rendered on July 14, 2023, and later amended on July 22, 2023[.]" On January 2, 2024, Appellees filed a Motion to Dismiss Appeal for Want of Subject Matter Jurisdiction arguing that Tom Reed lacks standing to challenge the sanctions orders against Jared Woodfill.[1]

An amended Notice of Appeal was filed with this Court on or about March 30, 2024, naming both Tom Reed and Jared Woodfill as appellants. Appellees did not object to the amended notice. The initial Notice of Appeal conferred appellate jurisdiction over all the parties to the trial court's Order Imposing Sanctions—

---

[1] The Motion to Dismiss also argued that the first brief filed by Appellants, which challenged the trial court's show-cause order, should be dismissed because the originally-filed notice of appeal did not refer to that order and only indicated that an appeal was taken from the Order Imposing Sanctions and Amended Order Imposing Sanctions. The Amended Brief subsequently filed by Appellants does not challenge the show-cause order.

12

including Jared Woodfill, who was named in that order. *See* Tex. R. App. P. 25.1(b) ("The filing of a notice of appeal by any party invokes the appellate court's jurisdiction over all parties to the trial court's judgment or order appealed from."); *St. Mina Auto Sales, Inc. v. Al-Muasher*, 481 S.W.3d 661, 666 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). However, Tom Reed lacks standing to complain of the sanctions assessed solely against his attorney because a party is not harmed when sanctions are imposed solely against his attorney. *See Torrington Co. v. Stutzman*, 46 S.W.3d 829, 843 (Tex. 2000) ("Texas courts have long held that an appealing party may not complain of errors that do not injuriously affect it or that merely affect the rights of others."); *Cortez v. Brown*, No. 03-17-00365-CV, 2019 Tex. App. LEXIS 1480, at **7-8 (Tex. App.—Austin Feb. 28, 2019, pet. denied) (mem. op.) (citing *Bahar v. Baumann*, No. 03-09-00691-CV, 2011 Tex. App. LEXIS 7703, at *5 (Tex. App.—Austin Sept. 23, 2011, pet. denied) (mem. op.)); *Bahar v. Lyon Fin. Servs.*, 330 S.W.3d 379, 388 (Tex. App.—Austin 2010, pet. denied) (citing *Niera v. Frost Nat'l Bank*, No. 04-09-00224-CV, 2010 Tex. App. LEXIS 1709, at **3-4 (Tex. App.—San Antonio Mar. 10, 2010, pet. denied) (mem. op.)). Therefore, we consider the arguments in Appellants' brief as to Jared Woodfill only.

*2. Order Being Appealed*

Generally, only final judgments are subject to appeal. *See Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co., L.P.*, 540 S.W.3d 577,

13

581 (Tex. 2018) (per curiam). Absent a timely filed notice of appeal from a final judgment or appealable interlocutory order, we do not have jurisdiction over an appeal. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). A judgment is final for purposes of appeal if it disposes of all parties and claims in the record. *See id.*

That said, some post-judgment discovery orders may be reviewed by mandamus. *See Sintim v. Larson*, 489 S.W.3d 551, 556 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (citing *In re Amaya*, 34 S.W.3d 354, 356 (Tex. App.—Waco 2001, orig. proceeding)). We may consider an appeal as a mandamus petition where the appellant specifically requests that we do so. *See CMH Homes v. Perez*, 340 S.W.3d 444, 452-54 (Tex. 2011) (where a party "specifically request[ed] that its appeal be treated as a mandamus petition[,]" courts of appeal are instructed to consider the appeal as a petition for writ of mandamus); *In re Commitment of Hitt*, No. 09-22-00022-CV, 2024 Tex. App. LEXIS 1740, at **2-3 (Tex. App.—Beaumont Mar. 7. 2024, no pet.) (mem. op.) (granting appellant's request to consider his unauthorized petition for release as a petition for writ of mandamus, citing *CMH*). Here, Appellant Woodfill has not requested that, in the alternative, we consider this appeal as a petition for writ of mandamus.

The Texas Supreme Court has explained that an order imposing monetary sanctions for discovery misconduct "would be final and appealable when the

14

sanctions are reduced to a judgment and execution is authorized thereon." *See Arndt v. Farris*, 633 S.W.2d 497, 500 n.5 (Tex. 1982). Generally, post-judgment orders regarding discovery disputes are not final, appealable judgments over which this Court has jurisdiction, and such orders are only reviewable by mandamus. *Bahar*, 330 S.W.3d at 388. However, a post-judgment imposition of monetary sanctions is a final appealable judgment when the sanctions are reduced to a judgment and the order would support execution thereon. *See id.* ("Although the order did not explicitly state that 'execution is authorized,' it disposed of the sanctions issue and would support execution. Accordingly, we have jurisdiction to review it."); *see also Arndt*, 633 S.W.2d at 500 n.5; *World Class Cap. Grp., LLC v. Gibson, Dunn & Crutcher LLP*, No. 03-21-00360-CV, 2023 Tex. App. LEXIS 2055, at **18-19 (Tex. App.—Austin March 30, 2023, no pet.) (mem. op.) (concluding appellate courts have jurisdiction over an order compelling discovery that imposed monetary sanctions that would support execution, even though the order did not explicitly state that execution was authorized); *Sintim*, 489 S.W.3d at 557.

We conclude that this post-judgment imposition of monetary sanctions is a final appealable judgment because the sanctions are reduced to a judgment and the order would support execution thereon. *See Arndt*, 633 S.W.2d at 500 n.5; *Sintim*, 489 S.W.3d at 557.

## Standard of Review

We review a trial court's ruling on a motion for sanctions under an abuse of discretion standard. *Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 717 (Tex. 2020) (citing *Cire v. Cummings*, 134 S.W.3d 835, 838-39 (Tex. 2004)); *Am. Flood Rsch., Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006). A trial court abuses its discretion if it acts without reference to guiding rules and principles such that the ruling is arbitrary or unreasonable. *Brewer*, 601 S.W.3d at 717 (citing *Cire*, 134 S.W.3d at 838-39); *see also Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

When reviewing a sanctions award, the appellate court must determine whether there is a direct nexus between the improper conduct and the sanction imposed. *See Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). We examine the record to determine if the sanction imposed is excessive and if less severe sanctions would or would not have been sufficient to promote compliance. *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991); *see also 21st Mortg. Corp. v. Hines*, No. 09-15-00354-CV, 2016 Tex. App. LEXIS 13003, at *6 (Tex. App.—Beaumont Dec. 8, 2016, pet. denied) (mem. op.). An appellate court will uphold a trial court's order imposing sanctions provided some evidence supports its decision. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009); *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998). When reviewing matters committed to

16

the trial court's discretion, we may not substitute our own judgment for that of the trial court. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). We review the entire record to determine whether the trial court abused its discretion by imposing sanctions. *Am. Flood Rsch., Inc.*, 192 S.W.3d at 583.

Rule 215 allows a trial court to sanction parties for failing to comply with discovery. Tex. R. Civ. P. 215.2. It provides for a wide "variety of sanctions for discovery abuse." *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 184 (Tex. 2012). Under Rule 215, a trial court may order a disobedient party or his attorney to pay all or part of the expenses of discovery, court costs, or both. *See* Tex. R. Civ. P. 215.2(b)(2). Discovery sanctions may be imposed: (1) to secure compliance with the rules; (2) to deter abuse; and (3) to punish abuse. *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992); *In re N. Hous. Pole Line, L.P.*, No. 09-19-00384-CV, 2020 Tex. App. LEXIS 196, at *5 (Tex. App.—Beaumont Jan. 9, 2020, orig. proceeding) (per curiam); *see also Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 363 (Tex. 2014); *Cire*, 134 S.W.3d at 839. "The law requires [] that any sanction imposed by the trial court must be 'just[.]'" *Paradigm Oil, Inc.*, 372 S.W.3d at 184 (citing Tex. R. Civ. P. 215.2(b)). Whether a trial court imposed a just sanction is measured by two standards. *TransAmerican*, 811 S.W.2d at 917. First, the sanctions must bear a direct relationship to the offensive conduct. *Id.* Second, the sanctions must not be excessive. *Id.*

17

Analysis of Issues on Appeal

*1. Failure to Personally Serve Tom Reed*

In his first issue, Woodfill argues that "[t]he trial court erred and violated the due process rights of Appellants by holding a hearing on Appellees' enforcement action without personal service on Appellant Reed." Neither Reed nor Woodfill made this argument in the trial court, so the issue has not been preserved for appeal. *See* Tex. R. App. P. 33.1(a) (to preserve error for appeal, a party must raise the complaint to the trial court and seek a ruling thereon). Further, Woodfill does not explain how the failure to personally serve Reed harmed Woodfill, and "an appealing party may not complain of errors that do not injuriously affect [him] or that merely affect the rights of others." *Torrington Co.*, 46 S.W.3d at 843. Therefore, we overrule Woodfill's first issue.

*2. Failure to Direct the Sanction Against the Abuse and Offender*

In his second issue, Woodfill argues that the trial court "arbitrarily imposed $11,645.50 on Appellant Woodfill without any consideration of whether Appellant Woodfill was the true offender." According to Woodfill, Reed never appeared and could not testify about whether the failure to respond to Appellees' discovery requests was his fault, Woodfill's fault, or the fault of both. Woodfill argues that the trial court must attempt to determine whether the offensive conduct is attributable to counsel only, to the party only, or to both, citing *TransAmerican*, 811 S.W.2d at 917.

18

In the contempt hearing, the trial court questioned Woodfill about his failure to appear at the show-cause hearing, his failure to notify the court, and his failure to respond adequately to discovery requests. Woodfill agreed that "ultimately it is on me. It's our fault. [] We couldn't get the documents, so I probably should have dismissed earlier[]"; that he "[had] no excuse for" not appearing at the show-cause hearing; and that he "should have called" opposing counsel to let them know of his problems trying to reach Tom Reed. Although Woodfill told the trial court that Tom Reed was "on another venture and working on a strawberry farm," Woodfill did not suggest that Reed was at fault for Woodfill's failure to comply with the trial court's May 1st order, and Woodfill agreed that ultimately it was the fault of Woodfill and Woodfill's law firm. The trial court explained from the bench that Woodfill's conduct was sanctionable because he failed to confer with opposing counsel on discovery issues, he failed to appear for a hearing as ordered by the trial court, and he failed to inform the trial court of any difficulties. As the trial court stated, Woodfill's foremost duty was zealous representation of his client and problems arose that interfered with that duty, he "need[ed] to let the client know and [] cut them loose." The trial court explained,

> . . . you file a lawsuit, you've got to participate in [it]. You're lead counsel. It doesn't matter if your associate did it, if your paralegal did it, if your contract attorney did it. It doesn't matter. It all lands at your feet. It is your reputation that is on the line, and that's exactly why the show cause order is directed at you, is that you were the one that they've had difficulty with in this case, not Dr. Reed, but you.

19

Because the transcript of the contempt hearing reflects that the trial court questioned Woodfill about the circumstances and listened to the testimony of Woodfill, we cannot say that the trial court did not attempt to determine the locus of responsibility. *See TransAmerican*, 811 S.W.2d at 917. The trial court's stated reasons are supported by the record, and we cannot say the trial court's ruling was arbitrary or unreasonable. *See Brewer*, 601 S.W.3d at 717; *Low*, 221 S.W.3d at 614. Therefore, we conclude that the sanctions imposed on Woodfill bear a direct relationship to the offensive conduct. *TransAmerican*, 811 S.W.2d at 917. We overrule Woodfill's second issue.

*3. Whether Attorney's Fees Sanctions were Necessary and Reasonable*

In his third issue, Woodfill states that the trial court erred by failing to find that fees submitted by counsel for the Hospital were reasonable and necessary. Woodfill then specifically complains about certain entries on the submitted bills and about the use of local counsel, and other items within the bills. The appellate record does not reflect that Woodfill ever made these complaints in the trial court. *See* Tex. R. App. P. 33.1(a). Further, he fails to cite any authority to support this issue. *See* Tex. R. App. P. 38.1(i) (requiring an appellate brief to cite to the record and to legal authority). Even assuming without deciding that he preserved this argument or that his argument is a challenge to the sufficiency of the evidence to support the award, we find no error.

Woodfill challenges the amount of "review" time reported by the Hospital's counsel, and the time reported by a local attorney who allegedly "did not participate in the preparation of any of the enforcement pleadings" and who allegedly "was one of the top donors to the trial judge's election campaign."

Whether attorney's fees are reasonable and necessary is a fact issue to be determined by the factfinder. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 489 (Tex. 2019) (citing *Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 231 (Tex. 2010)). The party seeking attorney's fees bears the burden to establish reasonableness and necessity. *See id.* at 488 (citing *In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d 794, 809 (Tex. 2017) (orig. proceeding)).

"[T]he fact finder's starting point for calculating an attorney's fee award is determining the reasonable hours worked multiplied by a reasonable hourly rate, and the fee claimant bears the burden of providing sufficient evidence on both counts." *Id.* at 498. "[T]he burden is on the fee applicant to produce satisfactory evidence [] that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to -- for convenience -- as the prevailing market rate." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see also Rohrmoos*, 578 S.W.3d at 499. In awarding attorney's fees, the trial court "'must take into account various factors such as: the nature and

21

complexity of the case; the nature of the services provided by counsel; the time required for trial; the amount of money involved; the client's interest that is at stake; the responsibility imposed upon counsel; and the skill and expertise required.'" *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex. 2009) (quoting *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex. 1990)). One of the factors a court should consider in determining the reasonableness of attorney's fees is "the fee customarily charged in the locality for similar legal services[.]" *Rohrmoos*, 578 S.W.3d at 493-94 (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)).

In this case, attorneys for the Hospital testified about their experience and billing rates and testified that the fees charged were customary in the area for attorneys of comparable experience and ability. A declaration of a senior attorney representing the Hospital was admitted into evidence that described that time billed specifically regarding the discovery issues and Defendants' Motion to Compel. Also admitted into evidence was a billing statement itemizing the time spent, billing rate, date of service, and employee names by attorneys for the Hospital. Woodfill's attorney cross-examined the attorneys for the Hospital at the hearing regarding the necessity or reasonableness of time billed. The trial court stated in its order "that Jared Woodfill shall pay to The Methodist Hospital System the sum of $11,645.50 as an award of its reasonable and necessary attorney's fees." Woodfill did not request

findings of fact and conclusions of law from the trial court. Deferring to the trial court's role as factfinder, as we must, we cannot say the trial court's assessment of attorney's fees as a sanction is not supported by the record, nor that the trial court did not consider whether the attorney's fees sought were reasonable and necessary. *See Rohrmoos*, 578 S.W.3d at 488, 493-94. Accordingly, we conclude that the evidence is sufficient to support the trial court's award of attorney's fees as sanctions and the sanctions imposed were not excessive. *See TransAmerican*, 811 S.W.2d at 917. We overrule Woodfill's third issue.

Having overruled all of Woodfill's issues on appeal, we affirm the trial court's Amended Order Imposing Sanctions.

AFFIRMED.

LEANNE JOHNSON
Justice

Submitted on April 1, 2025
Opinion Delivered May 1, 2025

Before Johnson, Wright and Chambers, JJ.

23